# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1942
_____

United States of America,                    *
                                             *
            Plaintiff-Appellee,              *
                                             *
      v.                                     *
                                             *
Tareke Lewis,                                *
                                             *
            Defendant-Appellant.             *


_____

No. 09-2036
_____

Appeals from the United States
District Court for the
Eastern District of Arkansas.

United States of America,                    *
                                             *
            Plaintiff-Appellee,              *
                                             *
      v.                                     *
                                             *
Anthony Lamont Randle,                       *
                                             *
            Defendant-Appellant.             *


_____

Submitted: January 15, 2010
Filed: January 29, 2010
_____

Before MURPHY and BYE, Circuit Judges, and GOLDBERG,[1] Judge.
_____

MURPHY, Circuit Judge.

Appellants Tareke Lewis and Anthony Randle were convicted by a jury of aiding and abetting each other in the possession of crack cocaine with intent to distribute and conspiracy to possess crack cocaine with intent to distribute. 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 846. The district court[2] granted their motions for acquittal on the conspiracy charge. They appeal from their remaining convictions and argue that the evidence was insufficient, that the court erred by rejecting their Batson challenge, and that it abused its discretion by not giving their proposed jury instruction. Lewis also challenges the reasonableness of his sentence. We affirm.

I.

On August 3, 2005, police executed a search warrant at a house in North Little Rock, Arkansas. When they arrived, appellant Lewis was on the front porch. Despite their commands to get on the ground, Lewis fled in a vehicle and was detained two blocks away.

Officers found a pair of digital scales in the car and $480 on Lewis' person. Lewis identified the house as his residence and the car as his own, although it was subsequently learned that the car was registered to Randle. In the northwest bedroom of the house, officers found firearms, ammunition, a large quantity of crack cocaine and cocaine, marijuana, and a set of scales similar to those found in Randle's car at the

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

time it was being driven by Lewis. Lewis' identification card was found in the northwest bedroom of the house, and recent mail addressed to Randle was discovered in another bedroom along with a plate with granular substance on it, a razor, a gun, and marijuana. Randle listed the house's address on his drivers license.

During voir dire, DG, an African American woman in the jury pool stated that she had "heard the name" of a defense witness and that she believed he worked for the Department of Finance and Administration. She also stated that she had some family members involved in drug activity, but that she could be an impartial juror. EH, a second African American panelist, said that she personally knew another defense witness "from the neighborhood."

Appellants raised a <u>Batson</u> challenge, arguing that the prosecutor struck DG and EH because of their race while they were the only remaining African Americans who could have been impaneled. The prosecutor pointed to another African American in attendance, but appellants argued that this person was too far down the list to be called even if both sides were to use every peremptory strike. The prosecutor stated that she struck DG and EH because of their familiarity with the defense witnesses and because of DG's family involvement with drugs. The district court accepted the government's reasons for the strikes and found no <u>Batson</u> violation. After the jury returned a guilty verdict on the charges of aiding and abetting and conspiracy, the district court entered a judgment of acquittal on the conspiracy charge.

On appeal, appellants claim that the evidence was insufficient to sustain the jury's determination on the aiding and abetting charge, that they were denied equal protection by the government's exercising peremptory strikes against the two African American jury prospects, and that the district court abused its discretion in rejecting their proposed jury instruction. Lewis also challenges his sentence.

II.

We review a challenge to the sufficiency of the evidence de novo, considering the facts and resolving evidentiary conflicts in the light most favorable to the verdict. United States v. Selwyn, 398 F.3d 1064, 1065 (8th Cir. 2005). A conviction may be overturned only where "no reasonable jury could have found [appellants] guilty beyond a reasonable doubt." United States v. Bell, 477 F.3d 607, 613 (8th Cir. 2007).

To establish that the appellants aided and abetted each other in the possession of crack cocaine with intent to distribute, the government had to prove that each one associated himself with the unlawful venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed. United States v. Santana, 524 F.3d 851, 853 (8th Cir. 2008).

Evidence linking Lewis and Randle to each other and to the drug trafficking included the car, which Lewis had access to and claimed to possess although it was registered to Randle; $480 on Lewis' person while he was driving the car; similar digital scales in the car and house; and the proximity in the house of drugs, drug paraphernalia, firearms, ammunition, and identifying documents (mail to Randle and Lewis' identification card). Lewis identified the house as his residence. While Randle denied living there, the address was on his license and there was recent unopened mail to him in the house. There was also evidence that Lewis fled the scene despite a police order to get on the ground, evidence from which a factfinder might infer consciousness of guilt. See United States v. Webster, 442 F.3d 1065, 1067 (8th Cir. 2006).

The jury was also presented with conflicting evidence, including testimony that Randle lived elsewhere, that Lewis had not attempted to flee, and contradictory testimony about where Randle's mail and Lewis' identification were found. In addition chain of custody issues were raised.

It is the jury's prerogative to resolve conflicts in the testimony and determine the credibility of witnesses.  United States v. Torres, 552 F.3d 743, 747 (8th Cir. 2009).  The question on appeal is whether the evidence was sufficient for a reasonable jury to find guilt beyond a reasonable doubt, not whether they could have found appellants not guilty.  "If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction."  United States v. Serrano-Lopez, 366 F.3d 628, 634(8th Cir. 2004) (quotation omitted).

Appellants also argue that there was no direct evidence that either man aided or abetted the other in knowingly possessing crack cocaine with intent to distribute. There was no evidence that appellants were seen together, for example, and Lewis was apparently not a suspect until officers saw him in front of the house when they arrived to execute the search warrant.  "When considering a charge of aiding and abetting," however, circumstantial evidence is "intrinsically as probative as direct evidence and may be the sole support for a conviction."  United States v. Opare-Addo, 486 F.3d 414, 417 (8th Cir. 2007) (quotation omitted).

Although the jury could have concluded otherwise, the evidence was sufficient for a reasonable jury to conclude that the appellants aided and abetted each other in drug trafficking.

_____

We next address appellants' Batson challenge.  The government violates the Equal Protection clause if it uses a peremptory strike to remove a potential juror solely because of his or her race.  Batson v. Kentucky, 476 U.S. 79, 89 (1986).  Courts considering a Batson challenge apply a three step analysis: the defendant must make a prima facie showing, then the prosecution has an opportunity to offer a race neutral basis for the strike, and finally the court determines whether the defendant has established purposeful discrimination. See Snyder v. Louisiana, 128 S.Ct. 1203, 1207

(2008). We review for clear error the district court's denial of appellants' Batson challenge. United States v. Bolden, 545 F.3d 609, 614 (8th Cir. 2008).

The district court did not explicitly decide whether appellants stated a prima facie case or whether, as appellants alleged, DG and EH were the only remaining African Americans on the panel who could have been impaneled. When, as here, the government offered a nondiscriminatory explanation for the strikes and the court "ruled on the ultimate question of purposeful discrimination, the preliminary *prima facie* issue [arguably] became moot." United States v. Walley, 567 F.3d 354, 357 (8th Cir. 2009). Thus we focus our review on the district court's conclusion that the government's reasons for striking venire persons DG and EH were nondiscriminatory. See id.

The prosecutor explained that she struck EH because she personally knew a defense witness and struck DG because she knew of a defense witness and had family involvement in drugs. This court upholds the denial of a Batson challenge if the government's reasons for the strike were legitimate and nondiscriminatory, even if they may not have been sufficient to strike the potential juror for cause. See United States v. McKay, 431 F.3d 1085, 1092 (8th Cir. 2005).

Appellants argue that the government's proffered reasons for the strikes were pretextual, but they offer no evidence to undermine the government's defense of its strike against EH for knowing a defense witness "from the neighborhood." As for DG, appellants allege that the prosecutor would have asked follow up questions if she had been concerned about DG's neutrality. The prosecutor asked no venire member any direct question, however, except for EH who was asked how she knew the witness.

Appellants also point to the fact that the prosecutor did not strike other panelists who had family members involved in drug activity. Evidence that "a prosecutor's

proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve" tends to prove purposeful discrimination. Miller-El v. Dretke, 545 U.S. 231, 241 (2005). There were other potential jurors who had family involvement in drugs, several of whom were stricken for cause, but appellants point to no other venire member who recognized a defense witness and was not stricken.

Finally, appellants argue that pretext is evident in the prosecutor's mischaracterization of DG's testimony. The prosecutor stated that DG knew and worked with the witness when in fact DG had said she was "just familiar with the name." When the court and defense counsel correctly recalled DG's testimony, the prosecutor responded that she was nonetheless "uncomfortable" with DG's knowledge of the witness and her family's involvement in drug use. The district court's resolution of a Batson challenge is a factual determination entitled to "great deference[,]" Bolden, 545 F.3d at 614 (quotation omitted), and we conclude that the court did not clearly err in concluding that these reasons were race neutral.

———————

Turning to appellants' challenge to the district court's jury instructions, we review jury instructions properly objected to at trial for an abuse of discretion to determine "whether the instructions as a whole accurately and adequately state the relevant law." United States v. Stymiest, 581 F.3d 759, 763 (8th Cir. 2009) (quotation omitted). We accord district courts broad discretion in forming jury instructions, reversing only where an instructional error affected a party's substantial rights. United States v. Farish, 535 F.3d 815, 821 (8th Cir. 2008).

The instruction appellants challenge was taken from the Eighth Circuit Model Jury Instructions. With regard to the presumption of innocence and burden of proof, appellants sought a substitution or inclusion of the "two conclusions" instruction derived from 1A Kevin F. O'Malley, et al., Federal Jury Practice and Instructions §

12.10 (6th ed. 2008) (formerly 1 Edward J. Devitt & Charles B. Blackmar, Federal Jury Practice and Instructions § 11.14 (3d ed. 1977)) instead of Eighth Circuit Model Jury Instruction 3.08. While the instructions are substantively similar, the proposed "two conclusions" instruction states that "[i]f the jury views the evidence in the case as reasonably permitting either of two conclusions – one of innocence, the other of guilt – the jury must, of course, adopt the conclusion of innocence."

The district court rejected appellants' instruction on the ground that Instruction 3.08 "covers essentially all the points" of the "two conclusions" instruction although the "wording is different[.]" The court did permit appellants' counsel to argue in closing that the jury should find appellants not guilty if the evidence equally supports a finding of guilt or innocence, but counsel chose not to make that point in closing. Appellants nonetheless argue that in light of the weak evidence presented at trial, objections they raised during the government's closing argument, and the court's elements instruction,[3] the clarity of the "two conclusions" instruction was necessary to protect appellants' due process rights.

This court historically approved of the "two conclusions" instruction in dicta. See United States v. Hollister, 746 F.2d 420, 424 (8th Cir. 1984). Yet "the defendant is not entitled to a particularly worded instruction where the instruction given by the trial judge adequately and correctly covers the substance of the requested instruction." United States v. Williams, 109 F.3d 502, 508 (8th Cir. 1997) (internal quotation and alterations omitted).

---

[3]Appellants objected to the district court's instruction which stated that the government had to prove that the elements of possession with intent to distribute "were committed by some person or persons[.]" Appellants argued that the instruction should have explicitly named Lewis and Randle. Another instruction had stated that the indictment charged Lewis and Randle with aiding and abetting one another. Given the clarity of this instruction and the evidence presented at trial, no reasonable juror could have been confused about whom either defendant was alleged to have aided and abetted.

Instruction 3.08 accurately and correctly covered the substance of appellants' proposed instruction. It instructed the jury to presume the appellants' innocence, to begin with "a clean slate," not to view the indictment as evidence, and to keep the burden on the prosecution to prove guilt beyond a reasonable doubt. Rejecting the "two conclusions" language was not an abuse of discretion.

_____

Appellant Lewis challenges the reasonableness of his sentence. We first assess whether the district court committed a significant procedural error, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence[.]" Gall v. United States, 552 U.S. 38, 50 (2007).

Lewis concedes that since he raised no objection to the form of the sentence in the district court, any procedural sentencing errors are reviewed for plain error. See Fed.R.Crim.P. 52(b). We may reverse his sentence only if the court committed error "that is plain, . . . that affects substantial rights[, and that] . . . seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Pirani, 406 F.3d 543, 550 (8th Cir.2005) (en banc) (quotation omitted).

Lewis was sentenced to 150 months of imprisonment. He does not dispute the calculated guideline range of 135-168 months, nor does he challenge the application of a statutory minimum of 120 months. Rather, he argues that the district court should have imposed a downward variance from the correctly calculated range because his criminal history points accumulated when he was sixteen years old and because of the disparity in the sentences for crack cocaine and powder cocaine. See Spears v. United States, 129 S.Ct. 840 (2009); Kimbrough v. United States, 552 U.S. 85 (2007). The judge's procedural error, Lewis argues, was his failure to address these specific arguments at sentencing or to explain the sentence adequately.

"[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." Rita v. United States, 551 U.S. 338, 356 (2007). Lewis concedes that the district court stated that it "carefully considered" Lewis' sentencing memorandum and the presentencing investigation report, and that it listened to Lewis' counsel argue for a variance at the sentencing hearing. The court rejected a firearms enhancement requested by the prosecution and discussed several factors supporting the sentence pursuant to 18 U.S.C. § 3553(c). Specifically, the court noted that in rendering its sentence it was concerned about Lewis' criminal history and his involvement in the drug trafficking. We have concluded that judicial actions comparable to or less than those taken by the district court here satisfy procedural reasonableness. See, e.g., United States v. Jones, 563 F.3d 725, 729 (8th Cir. 2009); United States v. Sigala, 521 F.3d 849, 851-52 (8th Cir. 2008).

Lewis alternatively argues that the court's "passing over [his arguments for a guideline variance] in silence" resulted in a substantively unreasonable sentence. Our review of a sentence for substantive unreasonableness is narrow and deferential. United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc). "Where, as here, the sentence imposed is within the advisory guideline range, we accord it a presumption of reasonableness." United States v. Battiest, 553 F.3d 1132, 1136 (8th Cir. 2009) (quotation and alterations omitted); see also Gall, 552 U.S. at 51. While a district court does not abuse its discretion when it does consider the crack/cocaine disparity in sentencing, Kimbrough, 552 U.S. at 110-11, it is not required to do so. Battiest, 553 F.3d at 1137. The district court considered Lewis' arguments for a downward variance but appropriately exercised its discretion in rejecting them.

III.

Accordingly, we affirm the judgments of the district court.

_____