# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 11-1115/1152

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from United States |
| | * | District Court for the Eastern |
| v. | * | District of Missouri. |
| | * | |
| Frank Allen, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 15, 2011
Filed: July 13, 2011

_____

Before MURPHY and SMITH, Circuit Judges, and READE,[1] District Judge.

_____

READE, District Judge.

Frank Allen, Jr. appeals his conviction for being a felon in possession of a firearm. Allen claims the district court[2] erred by overruling his objections under

_____

[1] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

[2] The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

<u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Allen also appeals the district court's[3] revocation of his supervised release. We affirm.

I.

Allen pled not guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Allen's claims on appeal are limited to what took place at jury selection. After strikes for cause, five African Americans remained as potential jurors. The government then used three of its six peremptory challenges to strike prospective Jurors 9, 14, and 16, all of whom are African American. Allen, himself African American, made a <u>Batson</u> challenge to the strikes, arguing that a significant reduction in the number of African Americans on the panel would impair his ability to receive a fair trial.[4] The district court determined that Allen had established a prima facie case of racial discrimination and asked the government to explain its reasons for the strikes.

The government explained that it struck Juror 9 because she frequently had her eyes closed during jury selection and it was concerned she would not listen to all of the evidence. The government pointed out that it also struck another juror for the same reason. Allen countered by noting that Juror 9 responded to questioning during voir dire and appeared to be paying attention, and Allen's counsel stated that she did not see that Juror 9 had her eyes closed.

The government explained that it struck Juror 14 because he looked "slightly hostile" and expressed certain body language, such as sitting back in his chair with his

[3] The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

[4] Although Allen framed his argument this way before the district court, <u>Batson</u> is grounded in a defendant's and potential jurors' rights to equal protection. <u>See</u> <u>Smulls v. Roper</u>, 535 F.3d 853, 858-59 (8th Cir. 2008).

arms folded. Trial Tr. at 163-64. The government conceded it could not tell whether this demeanor was directed at the government or Allen, but nonetheless "felt uncomfortable seating him as a juror." Id. at 164. Allen countered by noting that Juror 14 answered several questions during voir dire, and Allen's counsel argued that she did not detect any hostility. The government responded by stating that "what it comes down to is your gut feeling," explaining it struck Juror 14 "out of an abundance of caution" due to Juror 14's perceived hostility to either Allen or the government. Id. at 165-66. Allen then argued that the government's explanation was "fairly vague and implausible" and insufficient to justify the strike. Id. at 166.

Finally, the government explained that it struck Juror 16 because the juror believed race may have played a factor in her brother's criminal prosecution. During voir dire, Juror 16 disclosed that her brother had been convicted of attempted murder. When asked if she thought her brother had been treated fairly, Juror 16 stated that "the case, from what all my siblings told me, I thought that it was racist, it was more like self-defense." Id. at 35. However, Juror 16 stated she did not think race would be a factor for her in this case, which involves an African American defendant and white police officers. Juror 16 also stated she could be fair and impartial to both sides and decide Allen's case based solely on the evidence. Nonetheless, the government stated it was concerned that race may be an issue for Juror 16, particularly because this case involves white police officers. Allen responded by noting that Juror 16 did not even know her brother at the time of his conviction and only learned from relatives that race may have been involved. Allen also argued that Juror 16 stated that she could set the issue aside and be fair and impartial in this case.

After hearing the government's explanations, the district court overruled Allen's Batson challenges. The district court stated that it also observed Juror 9 closing her eyes and noted that, "in the entirety of the voir dire process, she only responded to two questions . . . ." Id. at 163. With respect to Juror 14, the district court agreed that the government's explanation was vague, but did not consider it implausible. Finally, the district court noted Juror 16 "quite readily . . . testified that

she thought that what had happened with regard to her brother was racist." Id. at 167. The district court also noted that the government had sought to strike Juror 16 for cause, based on her statement during voir dire that she would not be able to convict based on the testimony of a single witness, even if she believed that witness beyond a reasonable doubt. The district court stated that, although it declined to strike Juror 16 for cause, this provided additional support for the government's strike. The district court credited the government's race-neutral explanations and denied Allen's Batson challenges.

After a two-day jury trial, Allen was found guilty, and the district court sentenced him to 115 months' imprisonment. At the time of his charge in this case, Allen was serving a term of supervised release on a prior drug conviction. Among other conditions, Allen was not to possess a firearm or commit another federal, state, or local crime. Based on Allen's conviction in this case, the district court revoked Allen's supervised release and sentenced him to 30 months' imprisonment.

II.

In these appeals, Allen asserts that the district court clearly erred in denying his Batson challenges.

> The Equal Protection clause of the Fourteenth Amendment prohibits the use of peremptory challenges to strike jurors solely on the basis of race. Doss v. Frontenac, 14 F.3d 1313, 1316 (8th Cir. 1994) (citing Batson, 476 U.S. at 79, 106 S.Ct. 1712, and Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991)). If a party makes a prima facie showing that a peremptory challenge is race based, the proponent must show a race neutral justification to overcome the objection. Id. The district court then decides whether the objecting party has shown purposeful discrimination. Id. Since those factual findings turn largely on credibility evaluations, they are due great deference, Batson, 476 U.S. at 98 n. 21, 106 S.Ct. 1712, and our review is for clear error, United States v. Moore, 895 F.2d 484, 485 (8th Cir.1990).

-4-

United States v. Ellison, 616 F.3d 829, 831-32 (8th Cir. 2010).

The district court concluded that Allen made a prima facie showing of discrimination. While the government did not object to this determination below, it argues for the first time on appeal that Allen failed to make a prima facie showing of discrimination because he relied solely on the number of African Americans stricken. "When, as here, the government offered a nondiscriminatory explanation for the strikes and the court ruled on the ultimate question of purposeful discrimination, the preliminary *prima facie* issue arguably became moot." United States v. Lewis, 593 F.3d 765, 770 (8th Cir. 2010) (internal quotation, alteration, and citation omitted). "Thus we focus our review on the district court's conclusion that the government's reasons for striking [the potential jurors] were nondiscriminatory." Id.

We begin our analysis with the government's peremptory strikes of Jurors 9 and 14, as the basis for these strikes and the basis for Allen's Batson claims are similar. This court has previously upheld race-neutral explanations like those the government offered below. See Ellison, 616 F.3d at 832 (holding that district court did not clearly err in accepting inattentiveness as a race neutral reason); United States v. Maxwell, 473 F.3d 868, 872 (8th Cir. 2007) ("[A] juror's demeanor and body language may serve as legitimate, race-neutral reasons to strike a potential juror."). Nonetheless, Allen argues that the government's reasons for striking Jurors 9 and 14 – inattentiveness, body language, and demeanor – are too subjective to survive a Batson challenge. Allen argues that these explanations, which are based entirely on a juror's appearance and/or demeanor, are prone to abuse. He also contends they preclude meaningful review because the explanations are difficult to judge from a written record.

We have observed that some race-neutral explanations, such as inattentiveness, require "subjective judgments that are particularly susceptible to the kind of abuse prohibited by Batson." United States v. Sherrills, 929 F.2d 393, 395 (8th Cir. 1991).

They may also require "observations of demeanor that will often not be reflected by the written record." Id. We recently noted, however, that "the potential for abuse can be mitigated by specific observations corroborating the government's justification for exercising a peremptory challenge." Ellison, 616 F.3d at 832. "The court's own observations may have added importance, but 'the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge.'" Id. (quoting Snyder v. Louisiana, 552 U.S. 472, 477, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008)).

While we do not discount Allen's concerns, we do not believe they are present in this case. The district court noted that it, too, observed that Juror 9 had her eyes closed during jury selection. The district court also noted that Juror 9 answered few questions during voir dire. With respect to Juror 14, the government offered specific observations of his demeanor and body language, such as sitting back with his arms crossed. Although Allen's counsel stated she did not detect any hostility from Juror 14, the district court, by rejecting the Batson challenge, implicitly "credited the government's observation and was in the best position to evaluate the government's credibility." Maxwell, 473 F.3d at 872. Similarly, "[a]lthough the district court did not clarify whether it had observed [Juror 14's] behavior, it had ample opportunity to consider the prosecutor's demeanor and credited the government's observations by finding its justification race neutral." Ellison, 616 F.3d at 832. "The district court is afforded deference in its determinations of the credibility of the prosecutor and the race-neutral explanations offered." United States v. Davidson, 449 F.3d 849, 853 (8th Cir. 2006) (upholding strikes based on body language and demeanor). Thus, we conclude that the district court did not clearly err in overruling Allen's Batson challenges with respect to Jurors 9 and 14.

We turn now to the government's peremptory strike of Juror 16. "A juror's expression of past dissatisfaction with law enforcement officers, which could indicate potential bias against the prosecution, is a legitimate race neutral reason for striking prospective jurors." United States v. Booker, 576 F.3d 506, 511 (8th Cir. 2009).

-6-

Allen argues, however, that Juror 16's subsequent testimony that she could set the issue aside and be fair and impartial in this case removed any doubt as to Juror 16's potential bias. This argument misses the point. "These were not challenges for cause, where a juror may be rehabilitated and remain on the venire, but were peremptory challenges, where rehabilitation does not preclude the strikes." United States v. Samuels, 543 F.3d 1013, 1018 (8th Cir. 2008).

Allen next attempts to show pretext by arguing that the government did not strike a similarly situated white juror. However, Allen did not raise this issue below, and "we will not consider claims of pretext based upon the failure to strike similarly situated jurors unless the point was raised in the district court." United States v. Walley, 567 F.3d 354, 358 (8th Cir. 2009). In any event, Juror 16 and the juror Allen identifies on appeal were not similarly situated. The juror at issue expressed dissatisfaction with the lack of prosecution in the poisoning death of his brother, particularly after his brother's wife allegedly admitted to the crime. Juror 16, in contrast, believed racism may have contributed to her brother's attempted murder conviction. We conclude that the district court did not clearly err in overruling Allen's Batson challenge with respect to Juror 16.

## III.

Allen appeals the revocation of his supervised release on the ground that the conviction on which it was based was tainted by Batson violations. Because the district court did not clearly err in overruling Allen's Batson claims, we conclude that the district court did not err in revoking his supervised release. See 18 U.S.C. § 3583(e)(3).

## IV.

The judgments of the district court are affirmed.

_____