# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3106

_____

United States of America,                    *
                                             *
            Plaintiff - Appellee,            *
                                             *    Appeal from the United States
      v.                                     *    District Court for the
                                             *    District of North Dakota.
Clifton Patterson,                           *
                                             *
            Defendant - Appellant.           *


_____

Submitted: May 18, 2012
Filed: July 17, 2012
_____

Before RILEY, Chief Judge, BYE and MELLOY, Circuit Judges.
_____

MELLOY, Circuit Judge.

Clifton Patterson was found guilty of aiding and abetting the use and carrying of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1), and possession of a firearm by a convicted felon in violation of  18 U.S.C. §§ 922(g)(1), 924(a)(2).  Prior to trial, Patterson had also pled guilty to bank robbery in violation of 18 U.S.C. § 2113(a).  On appeal, Patterson alleges that prosecutorial misconduct during closing argument requires reversal of his firearm convictions and a new trial on the merits. For the reasons stated below, we affirm.

I.

On December 10, 2009, the government filed a seven-count superseding indictment charging Patterson and co-defendants William Collins and Debra Jensen with several offenses stemming from a bank robbery that occurred in Gilby, North Dakota. On May 31, 2011, Patterson entered an open guilty plea to count one of the indictment for bank robbery. At that time, he did not enter a plea under count two, for use and carrying of a firearm during and in relation to a crime of violence, or under count three, for possession of a firearm by a convicted felon. On July 28, 2011, the government filed an information certifying Patterson had been convicted of six prior violent felonies. The government indicated its intent to seek an enhanced sentence of life imprisonment for count two under 18 U.S.C. § 3559(c)(1).

Patterson's trial on the firearm charges took place over three days in August 2011. Video surveillance from the day of the robbery, as well as the testimony of the bank teller present on that day, established that Patterson had carried into the bank and pointed at the teller what appeared to be a handgun. However, it was ultimately determined that Patterson had been carrying a BB gun pistol, which does not qualify as a firearm under federal law. Collins, on the other hand, brought into the bank a sawed-off shotgun, which does qualify as a firearm, and stood with it in the bank while Patterson filled bags with money.

Collins testified that Patterson had originally suggested obtaining a shotgun,[1] had sawed off the barrel, and had planned to use it during the robbery. On the way to the robbery, Collins and Patterson both drove separate stolen vehicles part of the way before driving together to the bank. Collins said that both the shotgun and the BB gun were in the vehicle driven by Patterson. It wasn't until the last minute outside

---

[1]Because both Patterson and Collins were prior felons, Jensen was the one who actually purchased the gun.

the bank, according to Collins, that Patterson decided Collins should take the shotgun while Patterson would put the money in the bag. The two men left the bank together and, after switching cars once again, returned to Collins's apartment. Collins testified that, sometime after the robbery, Jensen and Patterson disposed of the shotgun, which was never recovered. Patterson did not testify at trial, and much of his defense was dedicated to undermining the credibility of Collins's testimony.

During closing argument, the prosecutor made two arguments that Patterson contends were improper. The first comment occurred while the prosecutor was addressing the evidence that Patterson had aided and abetted the use of the shotgun. The prosecutor told the jury that Patterson and Collins both "walk[ed] in the bank—really, ladies and gentlemen, they both walk[ed] into the bank and is there any possible conception that Mr. Patterson didn't aid and abet the use of [the shotgun], didn't know what was going to happen? There's no evidence of that. The evidence is the exact opposite."

Defense counsel immediately objected and suggested that the government was improperly "asking if there is evidence that Mr. Patterson is innocent. And of course Mr. Patterson has no burden to prove his innocence, and I think this line of argument is shifting the burden of proof in an improper direction." With the jury still in the courtroom, the district court[2] acknowledged defense counsel's concern but overruled its objection, stating:

> Your statement on the law is correct. The defendant is under no obligation to prove anything and the jury's been instructed on that. Anytime you argue about the absence of evidence you can fall into that trap. However, if you follow the Court's instructions mere absence of evidence is a fact that can establish a fact under certain circumstances.

---

[2]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

I don't think that [the prosecutor's] argument has crossed the line. I would just ask [the prosecutor] to be careful as [it] sets forth the argument, and I'll instruct the jury just to remember that the burden does not ever shift to the defendant to prove his innocence.

The second comment occurred during part of the government's rebuttal. The defense had used much of its own closing argument to attack Collins's credibility and cast doubt on Patterson's purported possession of the shotgun before and after the robbery. The government's rebuttal therefore focused in part on defense counsel's credibility attacks. At one point, the prosecutor referenced a defense argument that questioned whether any evidence other than Collins's testimony showed that Patterson was in a car with the shotgun. The prosecutor suggested to the jury that defense counsel was "[t]rying to confuse you about the simple issue about these two individuals entering the bank, using a shotgun to rob the bank and the store and all he's doing is trying to confuse you." The prosecutor went on to address various arguments that the defense had used to undermine Collins's credibility and continued to assert they were not relevant to the case. The prosecutor concluded by telling the jury, "the facts here are simple. . . . They both have the same intent. They both assisted in the same acts, and one of those acts was using this shotgun."

On August 11, 2011, a jury acquitted Patterson of using or carrying of the firearm, but it found him guilty under count two of aiding and abetting the use and carrying of the shotgun. The jury also found Patterson guilty under count three. He was sentenced to the statutory maximum 240-month sentence under count one and a concurrent 262-month sentence under count three. Pursuant to the mandatory penalty in § 3559(c)(1), Patterson was sentenced to life imprisonment under count two.

-4-

II.

"A trial court is vested with broad discretion in controlling closing arguments and we will reverse only on a showing of abuse of discretion." United States v. Coutentos, 651 F.3d 809, 821 (8th Cir. 2011) (internal quotation marks omitted). Where a prosecutor makes improper comments during closing arguments, "we consider the cumulative effect of the improprieties, the strength of the evidence against the defendant, and whether the district court took any curative action." United States v. Swift, 623 F.3d 618, 623 (8th Cir. 2010) (internal quotation marks omitted).

"'It is well established that the Fifth Amendment forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.'" United States v. Sandstrom, 594 F.3d 634, 661 (8th Cir. 2010) (quoting United States v. Gardner, 396 F.3d 987, 988 (8th Cir. 2005)). Improper comment on a defendant's decision not to testify can be indirect. "When the prosecutor has neither directly commented on the defendant's silence, nor demonstrated an intent to draw attention to that silence, the issue is whether the jury would *naturally and necessarily* understand the comments as highlighting the defendant's failure to testify." Gardner, 396 F.3d at 989 (internal quotation marks omitted). Furthermore, the government "may not improperly suggest that the defendant has the burden to produce evidence." United States v. Burns, 432 F.3d 856, 861 (8th Cir. 2005) (internal quotation marks omitted).

Patterson argues that the prosecutor's comments improperly drew attention to the lack of evidence showing Patterson's innocent state of mind, which could only have been introduced by his own testimony. See United States v. Triplett, 195 F.3d 990, 995 (8th Cir. 1999) (reversing a conviction because prosecutor improperly commented on the absence of evidence where the defendant alone possessed the information necessary to contradict the government's case). Assuming that this

comment was improper, however, we do not believe that it could reasonably have affected the jury's verdict.

Any prejudice caused by the prosecutor's isolated comment was sufficiently cured by the district court's immediate statement to the jury and its final jury instructions. See United States v. Chase, 451 F.3d 474, 481 (8th Cir. 2006) (assuming prosecutor's isolated comments were improper, no prejudice occurred when the court gave an immediate curative instruction). Following defense counsel's objection to the comment, the district court gave an immediate curative instruction in open court, stating that the defendant never had a burden to prove his innocence. In the final jury instructions, the court twice stated that the defendant did not have a burden to prove his innocence. The court also explained that the jury could not even consider Patterson's failure to testify in its deliberation. Moreover, unlike a case such as Chase, where the complained-of comments came during rebuttal argument when the defense had no opportunity to respond to them, Patterson's counsel had a full opportunity to address the burden of proof during his own closing statement.

Patterson argues that the district court's curative actions were insufficient because its statement in open court that the "absence of evidence is a fact that can establish a fact under certain circumstances" was confusing, and therefore may have led the jury to improperly believe that Patterson had a duty to introduce exculpatory evidence. We disagree. In addition to its three separate statements that Patterson did not have a burden to prove his innocence, the district court also included in the final jury instructions a statement that "[t]he presumption of innocence alone is sufficient to find the defendant not guilty and can be overcome only if the Government proves, beyond a reasonable doubt, each element of the crime charged." Jurors are presumed to follow the court's instructions. United States v. Smith, 508 F.3d 861, 866 (8th Cir. 2007). We believe the district court's instructions were sufficient to cure the prosecutor's isolated improper comment and to prevent any prejudice to Patterson.

III.

Patterson next argues that during its rebuttal argument, the government improperly attacked the integrity of defense counsel. According to Patterson, the prosecutor's statement to the jury that defense counsel was "trying to confuse" it about a "simple issue" improperly drew attention to defense counsel's conduct and therefore requires reversal. Patterson did not make a contemporaneous objection during trial, so we review for plain error. United States v. Jewell, 614 F.3d 911, 927 (8th Cir. 2010). Under plain error review, relief is available only if the defendant shows: "(1) an error; (2) that is plain; and (3) that affects substantial rights." United States v. Lomeli, 596 F.3d 496, 504 (8th Cir. 2010) (internal quotation marks omitted).

Citing United States v. Holmes, 413 F.3d 770 (8th Cir. 2005), Patterson argues that this court has previously reversed a conviction where a prosecutor improperly told the jury that defense counsel, in effect, was trying to confuse the jury. Patterson's argument stretches our holding in Holmes beyond recognition. Patterson is correct that the prosecutor in Holmes made comments about the defense counsel using "smoke and mirrors" and wanting to "distract" the jury. Id. at 775. However, these comments were part of a series of statements directed personally at the defense counsel, which culminated in multiple comments that "he" and "they" (presumably referring to defense counsel and the defendant) needed to "get their stories straight." Id. We interpreted these comments as an accusation that defense counsel was "conspiring with the defendant to fabricate testimony," and concluded that they "encourage[d] the jury to focus on the conduct and role of [the defendant's] attorney rather than on the evidence of [the defendant's] guilt." Id.

The comments made by the prosecutor in this case do not rise to the level of those in Holmes. Rather than disparaging defense counsel by describing his arguments as "trying to confuse" the jury, the full context of the prosecutor's rebuttal

shows that he was attempting to distinguish the defense's attack on Collins's credibility from the uncontroverted facts of the case. The prosecutor made reference to multiple credibility attacks made by the defense counsel, and each time tried to portray them as irrelevant to the fact of the use of the shotgun during the robbery. "It is not improper for the government to comment on its interpretation of the evidence." Jewell, 614 F.3d at 928 (finding no plain error in a prosecutor's statement that a "smoke and mirrors" defense was misleading the jury because the "comments referred to the prosecutor's view of the strength of the theory of defense, and did not suggest fabrication of testimony"). We find no plain error in the prosecutor's comments.

IV.

Accordingly, we affirm the decision of the district court.

_____